United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

BRANDON G.[1],

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 25-cv-11091-LB

**ORDER REMANDING FOR FURTHER PROCEEDINGS**

Re: ECF Nos. 12, 13

**INTRODUCTION**

The plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying his claim for supplemental-security-income (SSI) benefits under Title XVI of the Social Security Act.[2] The administrative law judge (ALJ) decided the claim in an unusual posture: the plaintiff (who has been homeless, in custody, or both for most of the relevant period) never testified. The ALJ found that the plaintiff constructively waived his right to appear, took

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Pl.'s Br. – ECF No. 12 at 6. Citations to the administrative record (AR) are to the certified administrative record at ECF No. 9 and use the record's internal pagination. Other record citations are to the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

vocational-expert testimony, and issued a decision finding that (1) with his substance use, the plaintiff is disabled because his mental impairments meet Listing 12.04, but (2) without substance use, he would have no severe mental impairment at all, could perform a reduced range of light work, and thus is not disabled because his substance-use disorder is a contributing factor material to the disability determination.[3]

The plaintiff contends that the ALJ erred by (1) finding constructive waiver without properly assessing good cause, (2) finding substance use material, (3) discounting the opinion of examining psychologist Laura Catlin, Psy.D., (4) finding at step three that his physical impairments do not meet Listing 1.18, (5) discounting his symptom statements, and (6) adopting a residual functional capacity (RFC) that substantial evidence does not support. He asks the court to remand for an award of benefits or, alternatively, for further proceedings. The Commissioner responds that the ALJ followed the agency's constructive-waiver procedures and that substantial evidence supports the decision.[4] All parties consented to magistrate-judge jurisdiction, and the action is submitted for decision on the briefs without oral argument under the Supplemental Rules for Social Security Actions and Civil L.R. 16-5.[5]

The court reverses and remands for further proceedings. First, the constructive-waiver and good-cause findings do not survive review: the ALJ did not consider the plaintiff's documented mental limitations or the unforeseeable circumstances of his release from custody, and instead faulted the plaintiff for not personally responding to a show-cause notice, a demand that the circumstances offered as good cause (homelessness and cognitive impairment) made impossible to satisfy. Second, the finding that the plaintiff's mental impairments would be non-severe without substance use is not supported by substantial evidence: the ALJ did not address the most probative abstinence-period evidence (objective testing during a sustained period of custodial sobriety

---

[3] Admin. Law Judge Decision (Decision), AR 31–45; *see* AR 31 (waiver), 34–36 (Listing 12.04 with substance use), 37–39 (no severe mental impairment without substance use), 39–45 (residual functional capacity, step five, and materiality).

[4] Pl.'s Br. – ECF No. 12 at 10–29; Reply – ECF No. 14 at 3–12; Def.'s Br. – ECF No. 13 at 5–15.

[5] Consents – ECF Nos. 6–7; Pl.'s Br. – ECF No. 12 at 6; Suppl. R. Soc. Sec. Actions 5.

showing a full-scale IQ of 59) or the plaintiff's prior disability allowance based on borderline intellectual functioning, and the reasons for discounting Dr. Catlin's opinion do not withstand scrutiny. The court affirms the step-three finding on Listing 1.18. Because the record is not fully developed (the plaintiff has never testified, and his 2024 jail treatment records were never obtained), the court remands for further proceedings rather than an award of benefits.

## STATEMENT

### 1. Background and Medical Evidence

The plaintiff is forty-three years old and has been chronically homeless in Oakland.[6] He was diagnosed with ADHD as a child, placed in special-education classes, and prescribed psychiatric medication. At twelve he was sent to a boys' camp for violent behavior and then to a series of group homes, and he dropped out of school in the eleventh grade.[7] He last worked more than two decades ago, and his earnings record shows no income in over twenty years.[8] In December 2010, the Commissioner found him disabled on a prior application based on borderline intellectual functioning, a mood disorder, and the residuals of gunshot wounds to the hand and face. Consultative testing then produced verbal, performance, and full-scale IQ scores in the borderline range.[9]

Gunshot wounds and accidents dominate the physical record. Around 2006, the plaintiff was shot in the face and hands. Imaging shows an old mandible fracture traversed by hardware, old fractures of the right maxilla, and healed right-fifth-metacarpal fractures with intra-articular extension and secondary degenerative arthritis.[10] In November 2019, he was shot in the left ankle and left hand while attending a vigil, suffering severely comminuted intra-articular fractures of the

---

[6] AR 513, 678, 736, 907, 1979.

[7] AR 907, 2346.

[8] AR 344–49, 907.

[9] AR 74–81 (prior decision); *see* AR 79 (WAIS-III, Bender-Gestalt II, and WMS-II results).

[10] AR 671, 675, 890, 2346; *see also* AR 40 (Feb. 11, 2020 x-ray, Ex. 2F/20).

United States District Court
Northern District of California

navicular, talus, and cuboid. Podiatrists predicted severe talonavicular arthritis.[11] He could not use the crutches he was prescribed because he could not grip with his left hand, and he used a wheelchair while incarcerated in 2020 and 2021.[12] In July 2020, a car hit him: he fractured his left distal radius, developed carpal-tunnel syndrome, and underwent an open reduction and internal fixation of the left wrist that August.[13] In November 2022, a motorcycle-versus-automobile accident dislocated his left hip and fractured his left acetabulum, left patella, left distal radius, and ribs. After surgeries, he spent about a month in inpatient rehabilitation facilities, and in January 2023 an orthopedist instructed him to bear weight only with a platform walker, noting limited hand function and an inability to make a fist.[14] In July 2023, he went to the emergency department with left-knee pain that was worse after "running on it"; the exam showed a small effusion, full range of motion, and the ability to bear weight.[15]

Mental-health treatment appears almost entirely in custodial records. Jail providers documented sixteen treatment episodes in the Alameda County behavioral-health system dating to the plaintiff's youth, with prior diagnoses including PTSD, conduct disorder, dysthymic disorder, and ADHD.[16] During a 2020–2021 incarceration, clinicians diagnosed PTSD, an adjustment disorder with anxiety, and a severe hallucinogen-use disorder; mental-status exams noted an anxious and depressed mood, crying, restricted affect, low-volume speech, and endorsed symptoms of hypervigilance, panic, and exaggerated startle. The jail prescribed Banophen (diphenhydramine).[17] The plaintiff was arrested again in February 2024; his hearing representative

[11] AR 593, 614, 649, 678, 706.

[12] AR 678, 726, 748, 788, 880.

[13] AR 40–41 (Ex. 6F/819, 824, 826, 789, 753); *see also* AR 1979.

[14] AR 959, 974, 1043, 1052, 1086, 1119, 1323–25, 1365, 1388; *see also* AR 41 (Ex. 6F/168, 195, 201, 97).

[15] AR 41 (Ex. 6F/8, 10); *see* AR 1236–37.

[16] AR 899.

[17] AR 899–912 (esp. 899, 904, 907, 912); AR 41–42 (Ex. 3F/9–10, 12).

could not obtain the 2024 jail treatment records because he lacked an updated release from a client he could not reach.[18]

On June 14, 2024 (after roughly five months in custody and, by his report to the examiner, sober since February 2023), the plaintiff underwent a forensic psychological evaluation by Dr. Catlin at the Santa Rita Jail.[19] On the WAIS-IV, the plaintiff's full-scale IQ was 59, his processing-speed index was 59, and every index score was in the extremely low range.[20] He scored 19/30 on the Montreal Cognitive Assessment (MoCA), 69 on the PCL-5 (where 33 or higher suggests PTSD), and 28 on the Beck Depression Inventory (consistent with moderate depression), and his Conners' profile and the clinical interview supported a combined-type ADHD diagnosis.[21] Dr. Catlin diagnosed major depressive disorder, PTSD, combined-type ADHD, a mild intellectual disorder, and a polysubstance-use disorder, and she assessed marked limitations in all four "paragraph B" domains, off-task behavior thirty percent of the workday, and a need for unplanned breaks.[22] She opined that the plaintiff's substance use "did not contribute to or cause his mental health disorder," that his "mental health symptoms persist even during times of sobriety," and that his impairments and inability to function in the workplace "would still exist" absent the substance-use disorder.[23]

---

[18] AR 62–63, 514, 2347.

[19] AR 2345, 2347; *see* AR 42 (noting Dr. Catlin's report of sobriety "since February of 2023," Ex. 8F/4). The plaintiff's brief describes him as sober "since his arrest." Pl.'s Br. – ECF No. 12 at 15. Either way, the evaluation followed months of custodial abstinence.

[20] AR 2349, 2362–71; *see* AR 43 (Ex. 8F/6).

[21] AR 2349–52.

[22] AR 2352–57; *see* AR 43 (Ex. 8F/9, 13–15).

[23] AR 2355 (cleaned up).

United States District Court
Northern District of California

**2. The Hearings and the Show-Cause Exchange**

The plaintiff applied for SSI on September 2, 2021, alleging disability beginning January 1, 2004. The agency denied the claim initially on March 11, 2022, and on reconsideration on September 9, 2022, and the plaintiff requested a hearing.[24]

The hearing was set three times. The first setting, for March 5, 2024, did not go forward: on February 27, 2024, the plaintiff's representative told the hearing office (orally and in writing) that the plaintiff had just been arrested and was detained at the Santa Rita Jail, and he asked the office to coordinate with jail staff for a telephonic hearing.[25] The second setting, for May 31, 2024, was to proceed by telephone from the jail, but the plaintiff was not brought to the phone; correspondence referenced in the record indicates that jail staff, not the plaintiff, were responsible.[26]

The hearing was reset for November 1, 2024, again to be held by telephone, with the ALJ to reach the plaintiff on the jail's line. The agency mailed the notice of hearing (August 2, 2024) and a reminder notice (October 4, 2024) to the plaintiff at the Santa Rita Jail, his last known address.[27] In the intervening weeks, the plaintiff was released. On October 23, 2024, his representative told the hearing office that the plaintiff had been released (the representative did not know the exact date), that he had been unable to reach the plaintiff at the numbers on file, and that (based on the plaintiff's history) he believed the plaintiff was again homeless.[28]

The plaintiff did not appear at the November 1, 2024 hearing. His representative did. The representative said that his last conversation with the plaintiff was in late September 2024, around the time of his release, that he had since received one call from a different number, which he had

---

[24] AR 31, 131–37, 245–53.

[25] AR 160, 183–84, 187, 454.

[26] AR 187, 200, 204, 493. The plaintiff attached to his brief email correspondence between the hearing office and jail staff, representing that it is the correspondence referenced at AR 493. Pl.'s Br. – ECF No. 12 at 11 n.2 & Ex. 1. The court's review is confined to the administrative record, but the Commissioner does not dispute the account, and the disposition does not turn on it.

[27] AR 211–30; *see* AR 58–59; Reply – ECF No. 14 at 3–4 (conceding that the agency followed the required notice and contact procedures).

[28] AR 513.

called back repeatedly but which was always off, and that he believed, but could not confirm, that the plaintiff was homeless and on the street.[29] He stated at the outset and again at the close of the hearing that the plaintiff had not waived his right to testify and that good cause existed for his absence.[30] The ALJ found on the record that the plaintiff "constructively waived his right to appear," had the hearing monitor call the plaintiff's most recent number (it went to voicemail), took testimony from a vocational expert (VE), twice said that he would not issue a notice to show cause, and held the record open for three days for the 2024 jail records, records the representative explained he could not obtain without a new release from a client he could not find.[31]

The VE testified that a hypothetical person limited to light work (with occasional posturals, no ladders, occasional left-hand handling and fingering, environmental restrictions, and simple, routine tasks involving simple decisions and occasional workplace changes) could perform three representative jobs: deliverer, router, and school-bus monitor. A sedentary variant of the hypothetical allowed no work. And adding any one of the following to the hypotheticals eliminated those jobs and all other competitive work: no public interaction with only occasional coworker interaction; one absence per month; being off task ten percent of the workday; or a minimum of three unplanned ten-minute breaks a day.[32]

On November 4, 2024, the ALJ issued a Notice to Show Cause for Failure to Appear. The representative responded on November 13, 2024, explaining his understanding (based on the circumstances and his experience with the plaintiff) that the plaintiff had been indigent and homeless since his release and that his homelessness, combined with his mental impairments, prevented him from knowing about or attending the hearing.[33]

---

[29] AR 56–58.

[30] AR 59–60, 72–73.

[31] AR 59–63, 72 (waiver finding at 59–60; call attempt at 61; no-show-cause statements at 59 and 72; three-day record window at 62–63).

[32] AR 66–67 (jobs), 67–68 (sedentary), 68–69 (social limits), 69 (absences), 70 (off task), 71–72 (unplanned breaks).

[33] AR 31, 231, 237.

**3. The ALJ's Decision**

The ALJ issued an unfavorable decision on January 13, 2025.[34] He first found that good cause "has not been established": the plaintiff "himself did not respond" to the show-cause notice; the representative "articulated what he believes to be the reason for the claimant's absence" but "failed to show that he spoke with the claimant or found him"; and "[i]t would not be prudent to grant a request for a supplemental hearing when the claimant failed to appear, and he still cannot be found."[35]

The ALJ then conducted the sequential evaluation twice (with and without substance use). At step two, he found severe physical impairments (degenerative arthritis of the left talonavicular joint and of the right hand, both secondary to gunshot fractures) and, including substance use, seven severe mental impairments: ADHD, PTSD, major depressive disorder, dysthymic disorder, a mild intellectual disorder, a mood disorder not otherwise specified, and a polysubstance-use disorder "currently in remission."[36] Including substance use, the mental impairments met Listing 12.04, with marked limitations in interacting with others and in adapting or managing oneself. The ALJ grounded that finding largely in the plaintiff's 2020 disclosure that he used ecstasy daily before his incarceration and in an internet article from the National Institute on Drug Abuse describing MDMA's psychological effects, reasoning that daily use of such a substance "would cause marked limitations."[37]

Without substance use, the ALJ found, the plaintiff "would not have a severe psychological impairment" at all, with mild limitations in each paragraph B domain. For understanding, remembering, or applying information, he cited 2022 exam notes showing no or minor memory issues, partial recall on Dr. Catlin's five-word memory trials, and the MoCA score of 19/30, "indicative of only a mild cognitive impairment." For interacting with others, he contrasted a

[34] AR 28–45.

[35] AR 31.

[36] AR 34, 37–38.

[37] AR 34–36 & n.1 (cleaned up). The decision acknowledged that "[t]he medical evidence for the time period in which the claimant was actively engaging in substance use is limited." AR 35.

January 2020 emergency-department note (made in the context of intoxication) describing the plaintiff as uncooperative and yelling with cooperative presentations during 2020 jail visits and at Dr. Catlin's exam. For concentration, persistence, or pace, he again cited the MoCA, a successful letter-cueing subtest (though the plaintiff could not perform serial sevens), Dr. Catlin's observation that the plaintiff sustained attention during the evaluation, and 2022–2023 mental-status exams. And for adapting or managing oneself, he cited "fair grooming" at a June 2020 jail exam, an October 2021 note that the plaintiff was in stable housing "in the context of 9 months of sobriety," the plaintiff's reported ability to shop, take public transportation, and make simple meals, and Dr. Catlin's observation that he was adequately groomed and appropriately dressed. The paragraph B discussion does not mention the WAIS-IV results or the 2010 allowance.[38]

The ALJ found that the plaintiff's physical impairments did not meet or equal Listing 1.18 because the medical evidence "does not show" a documented medical need for a qualifying assistive device or the required inability to use the upper extremities.[39] Absent substance use, he assessed an RFC for light work (standing and walking six hours a day) with postural limits, occasional handling and fingering with the left upper extremity, no concentrated exposure to pulmonary irritants, and simple, routine tasks involving simple decisions and occasional workplace changes; a footnote explained that the mild intellectual disorder was accommodated by the limitation to unskilled work.[40] He discounted the plaintiff's symptom statements because "despite several injuries to both the upper and lower extremities, the claimant remains quite functional": he pointed to the treatment course after each acute injury, the July 2023 running note

---

[38] AR 37–39. Dr. Catlin's grooming observations were made while the plaintiff was in jail attire. AR 2348. The understanding-and-memory paragraph opens by finding a "mild" limitation but concludes that "no more than a moderate limitation of function in this area is supported" (an internal inconsistency addressed below). AR 38.

[39] AR 39 (citing 20 C.F.R. § 416.994(b)(5)(i), the continuing-disability-review regulation — an apparent clerical error; the operative regulation for an initial claim is § 416.920(d)).

[40] AR 39–40 & n.2. The RFC's postural limitations (frequent posturals; occasional ladders) are less restrictive than the hypothetical that produced the jobs the ALJ adopted (occasional posturals; never ladders; occasional left foot controls). AR 39–40, 66–69. Because the controlling hypothetical was more restrictive, the mismatch does not independently undermine the step-five finding, but it is another sign of imprecision in the decision.

United States District Court
Northern District of California

("suggesting a fairly high level of functionality"), the absence of treatment records after July 2023, "extremely limited" mental-health treatment, and the fact that the jail prescribed only diphenhydramine (with "no indication that he require[d] any psychotropic medication").[41]

As for the opinion evidence, the ALJ found the state-agency physical consultants persuasive (they limited the plaintiff to light work with occasional left-hand handling and fingering) and the state-agency psychological consultants unpersuasive because they had found the record insufficient to assess any limitations.[42] He found Dr. Catlin's opinion unpersuasive: it was "not well supported by an adequate explanation," was "inconsistent with the totality of the medical evidence," and was "at times internally inconsistent." He cited the contrast between her marked social-interaction ratings and her observations of a friendly, cooperative, responsive, "open, earnest, and forthright" presentation; the contrast between a marked hygiene-and-attire limitation and her observation of adequate grooming; the "vague" checkbox subcategories with "no nexus" to her testing; and her failure to explain "what constitutes a 'realistic goal'" or why the plaintiff could not set one.[43] At step five, relying on the VE, he found that a person with the assessed RFC could work as a deliverer, router, or school-bus monitor; he concluded that the substance-use disorder is a contributing factor material to the disability determination and that the plaintiff is not disabled.[44]

[41] AR 40–42 (cleaned up). The decision noted the plaintiff's report that he was taking Remeron (mirtazapine, a prescription antidepressant) at the 2024 evaluation but discounted it because "there is no indication in the record who prescribed this medication." AR 42; AR 2347.

[42] AR 36, 42–43.

[43] AR 43 (cleaned up).

[44] AR 44–45. Finding 8 states that "[t]he claimant can perform past relevant work," while finding 10 states that he "does not have past relevant work"; the step-five analysis confirms the latter, so finding 8 appears to be a clerical error. AR 44.

**4. This Action**

The Appeals Council denied review on October 31, 2025, making the ALJ's decision the Commissioner's final decision. The plaintiff timely sought judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).[45]

## LEGAL STANDARDS

**1. Standard of Review**

Under 42 U.S.C. § 405(g), the court may reverse the Commissioner's final decision only if it rests on legal error or is not supported by substantial evidence. *Lind v. Astrue*, 370 F. App'x 814, 815 (9th Cir. 2010) (cleaned up). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion:" "more than a mere scintilla," but less than a preponderance. *Biestek v. Berryhill*, 587 U.S. 97, 97 (2019) (cleaned up); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court reviews the record as a whole, weighing the evidence that supports and the evidence that detracts from the decision. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's, *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005), and may not reweigh the evidence, *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). But the ALJ must give enough reasoning to permit meaningful review, *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014), and may not credit isolated evidence supporting a conclusion while ignoring significantly probative evidence to the contrary, *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). The court will not reverse for harmless error — error that does not prejudice the claimant. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).

**2. The Five-Step Evaluation and Substance-Use Materiality**

A claimant is disabled if a medically determinable physical or mental impairment that has lasted or is expected to last at least twelve months prevents him from engaging in any substantial gainful activity. 42 U.S.C. § 1382c(a)(3)(A). The Commissioner applies a five-step sequential

[45] AR 1–3, 239–41; Compl. – ECF No. 1.

evaluation, asking whether (1) the claimant is engaged in substantial gainful activity; (2) he has a severe impairment; (3) the impairment meets or equals a listed impairment; (4) he can perform past relevant work; and (5) he can perform other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden at steps one through four; at step five, the burden shifts to the Commissioner. *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001).

A claimant is not disabled if drug addiction or alcoholism (DAA) "would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. § 416.935(a). When the ALJ finds the claimant disabled and there is medical evidence of DAA, the ALJ conducts the sequential evaluation a second time to determine which physical and mental limitations would remain if the claimant stopped using drugs or alcohol and whether the remaining limitations would be disabling. 20 C.F.R. § 416.935(b); *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). DAA is material (and benefits are denied) only if the remaining limitations would not be disabling. 20 C.F.R. § 416.935(b)(2). The claimant bears the burden of proving that DAA is not material. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

Social Security Ruling 13-2p supplies the framework for the materiality analysis. As relevant here: (1) for co-occurring mental disorders, a materiality finding requires "evidence in the case record" establishing that the claimant "would not be disabled in the absence of DAA," and the agency "will find that DAA is not material . . . and allow the claim" if the record is fully developed and the evidence does not establish that the co-occurring mental disorder would "improve to the point of nondisability" absent DAA; (2) documentation from a period of abstinence should show "what, if any, medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated"; (3) improvement "in a highly structured treatment setting" may be attributable, at least in part, to the setting or to treatment of the co-occurring disorder rather than to the cessation of substance use; and (4) the decision must explain the materiality rationale in enough detail for a subsequent reviewer to understand the basis for the finding. SSR 13-2p, 2013 WL 621536, at *4, *7, *9, *12–13 (Feb. 20, 2013) (cleaned up).

United States District Court
Northern District of California

## ANALYSIS

### 1. The Constructive-Waiver and Good-Cause Findings

The ALJ's finding that the plaintiff constructively waived his right to appear (and the accompanying rejection of good cause) was error. The ALJ did not consider the plaintiff's documented mental limitations or the unforeseeable circumstances of his release from custody, and the reasons he did give are circular. The error was not harmless. On remand, the plaintiff must be given the opportunity to appear and testify.

Social Security claimants "are entitled to due process in the determination of their claims," *Holohan v. Massanari*, 246 F.3d 1195, 1209 (9th Cir. 2001), which requires "meaningful notice and an opportunity to be heard," *Udd v. Massanari*, 245 F.3d 1096, 1099 (9th Cir. 2001) (cleaned up). The regulations give a claimant the right to appear before the ALJ, present evidence, and state his position, and they contemplate waiver of that right by a written statement. 20 C.F.R. § 416.1450(a)–(b). The agency's Hearings, Appeals and Litigation Law Manual (HALLEX) addresses the situation here: when a claimant does not appear but his appointed representative does, the ALJ may find that the claimant constructively waived the right to appear if the representative cannot locate the claimant, the notice of hearing was mailed to the last known address, and the required contact procedures were followed; the ALJ may take expert testimony at the hearing; and, after issuing a notice to show cause, the ALJ may decide the claim on the record if the claimant does not establish good cause for the failure to appear. HALLEX I-2-4-25(D)(2). In assessing good cause, the adjudicator "must consider any physical, mental, educational, or linguistic limitations" that may have prevented the claimant from appearing, and good cause "generally exists" when an unforeseeable event prevented the claimant or the representative from seeking a postponement in advance. HALLEX I-2-4-25(B), (C)(1)(b); *accord* 20 C.F.R. §§ 416.1411(a)(4), 416.1457(b)(2) (same factors in analogous good-cause contexts); *Golden v. Colvin*, No. 16-cv-05362-MEJ, 2017 WL 4642008, at *10–11 (N.D. Cal. Oct. 17, 2017).

HALLEX does not carry the force of law, and its violation is not independently reviewable. *Moore v. Apfel*, 216 F.3d 864, 868–69 (9th Cir. 2000). But it is entitled to respect to the extent it

persuades, *Clark v. Astrue*, 529 F.3d 1211, 1216 (9th Cir. 2008), and the Commissioner defends the decision on the ground that the ALJ complied with it.[46] More to the point, the ALJ undertook the good-cause inquiry himself: he issued the show-cause notice and made a good-cause finding in the decision. Having done so, he had to apply the governing standards and explain the finding in a reviewable way. *Cf. Treichler*, 775 F.3d at 1103. The finding fails on both counts.

The ALJ gave three reasons for rejecting good cause: the plaintiff "himself did not respond" to the show-cause notice; the representative only "articulated what he believes to be the reason for the claimant's absence" and had neither spoken with nor found the plaintiff; and it "would not be prudent" to grant a supplemental hearing when the plaintiff "still cannot be found."[47] None engages the good cause actually asserted.

First, the ALJ did not consider the plaintiff's mental limitations, a consideration the agency's own standards make mandatory. The ALJ himself found medically determinable ADHD, PTSD, major depressive disorder, dysthymic disorder, and a mild intellectual disorder, and by the time of the decision the record contained June 2024 testing showing a full-scale IQ of 59.[48] The representative's show-cause response squarely tied the plaintiff's absence to his mental impairments and homelessness.[49] The decision does not mention the point.

Second, the ALJ did not consider the unforeseeable-event sequence. The November 2024 hearing was noticed to the Santa Rita Jail and was to proceed by telephone on the jail's line; the plaintiff's release in the weeks before the hearing (on a date even his representative could not pin down) severed the arranged means of appearance and returned him to the streets without a working phone.[50] The prior setting had failed for reasons that were concededly not the plaintiff's

---

[46] Def.'s Br. – ECF No. 13 at 5–7 & n.1.

[47] AR 31.

[48] AR 34, 37, 2349.

[49] AR 237.

[50] AR 56–58, 211–30, 513.

fault.[51] A release from custody that scuttles a custodial phone hearing is the kind of unforeseeable event the agency's good-cause standards describe. The decision does not address it.

Third, the reason the ALJ did give is circular. The good cause asserted was that homelessness and cognitive impairment prevented the plaintiff from knowing about the hearing, attending it, or being reached at all. Faulting the plaintiff for not personally responding to the show-cause notice — and faulting the representative for being unable to "confirm" his client's circumstances — demands exactly what the asserted good cause explains the plaintiff could not do. If the explanation is true, no personal response or confirmation was possible; the absence of one is not evidence that the explanation is false. And the record refutes abandonment: the representative preserved the objection twice on the record and responded promptly to the show-cause notice, and the plaintiff has prosecuted this action.[52]

The Commissioner's response (that the notices went to the last known address and the contact procedures were followed) is true but answers a different question.[53] Those steps permitted the ALJ to go forward with the hearing and take the VE's testimony. They do not resolve whether good cause excused the non-appearance (the question the show-cause process exists to answer). On that question, the decision is silent where the standards require analysis and circular where it speaks. The Commissioner's authority is not to the contrary: in *Annalisa R. v. Saul*, the constructive-waiver finding failed at the locate prong; here that prong is satisfied, but the good-cause analysis is not. No. C19-1363-MAT, 2020 WL 1890612, at *3 (W.D. Wash. Apr. 16, 2020). Nor does the plaintiff's invocation of SSR 79-19 change the analysis: that ruling governs affirmative waivers, and the ALJ found a constructive one. The operative question is good cause.

The error was prejudicial. A procedural error warrants reversal only if it harmed the claimant. *Ludwig*, 681 F.3d at 1054. The decision turned on the plaintiff's functioning during periods of abstinence and outside custody (subjects on which his testimony is the most direct evidence), and

---

[51] AR 187; *see* AR 493; Pl.'s Br. – ECF No. 12 at 11 & n.2.

[52] AR 59–60, 72–73, 237; Compl. – ECF No. 1.

[53] Def.'s Br. – ECF No. 13 at 6–7; Reply – ECF No. 14 at 3 (conceding the point).

United States District Court
Northern District of California

the ALJ discounted the plaintiff's "statements" as inconsistent with the record while the constructive-waiver ruling denied him the forum to make and substantiate any statements under oath.[54] The VE's testimony confirms the stakes: modest additional limitations — social restrictions, one absence a month, ten percent off task — would eliminate all work.[55] On remand, the plaintiff must be afforded a hearing at which he may appear and testify.

**2. The Substance-Use Materiality Finding**

Substantial evidence does not support the finding that, without substance use, the plaintiff would have no severe mental impairment. The ALJ did not address the most probative abstinence-period evidence, did not engage the structured-setting guidance in SSR 13-2p, and rejected the only medical opinion on mental functioning for reasons that do not withstand review. The errors were not harmless.

**2.1 The Paragraph B Findings Absent Substance Use**

The decision's architecture frames the problem. With substance use, the ALJ found marked limitations meeting Listing 12.04, a finding built largely on the plaintiff's 2020 disclosure of daily ecstasy use and on a government website's description of MDMA's general effects, not on functional evidence from the period of use (which the ALJ acknowledged was limited).[56] Without substance use, everything became mild: the same ADHD, PTSD, depressive disorders, and intellectual disorder that the ALJ found medically determinable dropped, collectively, below severity.[57] Because the with-use findings were inferred from the use itself, the decision never established a baseline of functioning from which improvement in the absence of use could be projected. The materiality analysis therefore had to rest on the evidence of the plaintiff's actual functioning while abstinent: the evidence SSR 13-2p makes central, because documentation from

---

[54] AR 40.

[55] AR 68–71.

[56] AR 35–36 & n.1.

[57] AR 36–39.

a period of abstinence shows what findings and limitations "remained after the acute effects of drug and alcohol use abated." SSR 13-2p, 2013 WL 621536, at *12 (cleaned up).

The record contained exactly that evidence, and the ALJ's paragraph B analysis did not address it. Dr. Catlin evaluated the plaintiff in June 2024 after months of custodial abstinence (on the decision's own account, after more than a year of reported sobriety).[58] The WAIS-IV produced a full-scale IQ of 59, a processing-speed index of 59, and index scores uniformly in the extremely low range; the PCL-5 score of 69 far exceeded the PTSD threshold; and the Beck inventory indicated moderate depression.[59] Yet the paragraph B discussion rests the cognitive findings on the MoCA (a brief screening instrument) and on partial word-recall trials, describing a 19/30 score as "indicative of only a mild cognitive impairment," without mentioning the comprehensive intelligence battery administered at the same sitting.[60] The ALJ acknowledged the WAIS-IV scores elsewhere, in summarizing Dr. Catlin's report, but never reconciled them with a finding of no more than mild limitation in any domain.[61] An ALJ may not credit isolated findings while ignoring significantly probative contrary evidence, *Ghanim*, 763 F.3d at 1164, and may not resolve a conflict between a screening test and standardized intelligence testing by lay judgment, *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ may not substitute his own medical assessment for the evidence of record) (cleaned up).

The longitudinal record deepens the omission. The plaintiff was found disabled in 2010 based in part on borderline intellectual functioning, with IQ testing then in the borderline range — evidence corroborating that his cognitive deficits predate and persist independent of substance use.[62] The decision does not mention the prior allowance. Nor does it explain how a medically determinable intellectual disorder (which the ALJ elsewhere accommodated by limiting the plaintiff to unskilled work) produces no more than minimal work-related limitation once substance

[58] AR 42, 2345, 2347.

[59] AR 2349–52, 2362–71.

[60] AR 38–39.

[61] AR 43.

[62] AR 76–81.

use is removed.[63] The Commissioner identifies no evidence, and the decision cites none, that the intellectual disorder is an artifact of substance use or would improve with abstinence; the only medical opinion on the question said the opposite.[64]

The evidence the ALJ did cite cannot fill the gap without addressing SSR 13-2p's caution that apparent improvement in a highly structured setting may reflect the setting or concurrent treatment rather than abstinence. SSR 13-2p, 2013 WL 621536, at *12–13. The cooperative presentations, "fair grooming," and stable-housing note on which the paragraph B findings rest were recorded in jail (where meals, housing, clothing, and routine are supplied) or in acute-care settings treating gunshot and accident trauma. The decision draws the structure-independent inference without acknowledging, much less analyzing, the competing one the ruling requires the adjudicator to consider. And even in those structured settings, the records the ALJ cited documented an anxious and depressed mood, crying, hypervigilance, and exaggerated startle.[65] The decision's own text betrays the strain: the understanding-and-memory paragraph announces a "mild" limitation but concludes that "no more than a moderate limitation" is supported (and a moderate limitation is incompatible with the non-severity finding on which the entire second sequential evaluation rests).[66]

The Commissioner responds that the ALJ followed SSR 13-2p's substance without citing it: he ran the sequential evaluation twice and cited record evidence.[67] Half of that is right. The two-round structure tracks § 416.935 and the ruling, and the failure to cite the ruling by name is not itself error. The problem is substance, not citation: the ruling directs the materiality projection to

---

[63] AR 37, 40 n.2.

[64] AR 2355; Def.'s Br. – ECF No. 13 at 8–10 (describing Dr. Catlin's exam as "the only suggestion of any difficulties functioning absent DAA," a description the 2010 allowance and the jail records contradict).

[65] AR 41, 899, 904, 907, 912.

[66] AR 38; *see* 20 C.F.R. § 416.920a(d)(1) (mental impairments rated "none" or "mild" are generally non-severe). The discrepancy may be a drafting artifact carried over from the with-substance-use analysis (which rated this domain moderate, AR 35), but on judicial review the court cannot tell, which is itself the problem. *Treichler*, 775 F.3d at 1103.

[67] Def.'s Br. – ECF No. 13 at 9–10.

the abstinence-period findings, and the decision does not evaluate them. Nor can the finding rest on medical opinion — the ALJ found the psychological consultants unpersuasive (they assessed nothing for lack of evidence) and rejected Dr. Catlin — so the projection that seven medically determinable mental impairments collectively impose only minimal limitations rests on the ALJ's own synthesis of treatment snapshots, set against uncontradicted objective testing that the analysis never mentions. That is not substantial evidence, and the explanation does not permit meaningful review of the required projection. *Treichler*, 775 F.3d at 1103.

*Parra* places the burden of disproving materiality on the claimant. 481 F.3d at 748. SSR 13-2p, in turn, directs the agency in co-occurring mental-disorder cases to find DAA not material (and allow the claim) if a fully developed record does not establish improvement to the point of nondisability. SSR 13-2p, 2013 WL 621536, at *9. The court need not decide how those principles interact.[68] Under either allocation, the finding fails because the ALJ did not evaluate the evidence the framework makes central and did not explain the finding in a reviewable way. Whether the plaintiff can carry his burden is a question for a properly conducted analysis on a complete record — one that includes his testimony.

### 2.2 Dr. Catlin's Opinion

For claims filed after March 27, 2017, the ALJ evaluates the persuasiveness of medical opinions and must articulate how he considered the two most important factors, supportability and consistency; those persuasiveness findings must themselves be supported by substantial evidence. 20 C.F.R. § 416.920c(a)–(b); *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022). The ALJ's stated reasons for finding Dr. Catlin's opinion unpersuasive do not hold up on this record.

*Consistency.* The "totality of the medical evidence" against which the ALJ measured the opinion consists almost entirely of records generated in emergency departments, operating rooms, and rehabilitation units treating gunshot and accident trauma, plus custodial mental-health notes. That the plaintiff was "cooperative" with providers in those settings is weak evidence of his

---

[68] The parties address the issue only glancingly. Pl.'s Br. – ECF No. 12 at 13–14, 17; Def.'s Br. – ECF No. 13 at 7.

capacity for sustained workplace interaction, and the absence of psychiatric findings in trauma-care notes says little because those providers were not screening for mental disorders. *Cf. Moody v. Berryhill*, No. 16-cv-3646-JSC, 2017 WL 3215353, at *10 (N.D. Cal. July 28, 2017) (a "normal" mental-status designation during medical visits is not dispositive of mental health as a whole); *Ghanim*, 763 F.3d at 1164. The custodial notes, for their part, were not uniformly normal: they documented a depressed and anxious mood, crying, hypervigilance, and startle.[69]

*Internal consistency.* That the plaintiff was friendly, cooperative, and engaged during a one-on-one forensic evaluation is not inconsistent with marked limitations in sustaining interaction, pace, and attendance across a workweek (the subject of Dr. Catlin's ratings, which she defined in terms of performance precluded more than twenty percent of the time).[70] Her mental-status exam was not normal (she recorded a tense presentation, depressed mood, and reactive affect), and her marked ratings were tied to the test data (uniformly extremely low cognitive and processing scores; the Conners' profile) and to the history (placement in a boys' camp for violent behavior at twelve; decades of institutionalization; the plaintiff's report that paranoia around people forced him from his last job).[71] As for hygiene and attire, both observation settings were custodial (where attire is a uniform and hygiene is structured), and the report itself recorded difficulty with hygiene and self-care outside custody, a difficulty the ALJ acknowledged but set aside as etiologically unclear. An acknowledged ambiguity in probative evidence is a reason to develop or explain, not to discount. *Cf. Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).[72]

*Supportability.* The subcategories the ALJ faulted as vague (including the ability to "[s]et realistic goals" and "[m]ake plans independently of others") are the Commissioner's own paragraph B rubric. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00E(4). Using the agency's form language is not a failure of explanation. And the ratings did not stand alone: they accompanied a

---

[69] AR 899, 904, 907, 912. The ALJ also noted, accurately, that Dr. Catlin did not review the overall record. AR 43. That is a fair consistency consideration, but it does not license disregarding her objective test results, and the ALJ did not rest the finding on it.

[70] AR 43 (quoting the form's definition of "marked," Ex. 8F/13–15).

[71] AR 2346–50, 2353–54; Reply – ECF No. 14 at 7–8.

[72] AR 39, 2346, 2348, 2353, 2357.

United States District Court
Northern District of California

twenty-seven-page report with a clinical interview, personal and treatment history, mental-status findings, a battery of standardized tests, and a narrative explaining, among other things, that the plaintiff has trouble keeping his attention focused while working, is forgetful and loses things necessary for tasks, and cannot function independently, appropriately, effectively, and on a sustained basis.[73] This is not the brief, conclusory, and inadequately supported opinion that an ALJ may permissibly discount. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (cleaned up).

The court may not reweigh the evidence and must uphold a rational interpretation of the record. *Ahearn*, 988 F.3d at 1115–16; *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). But that deference runs to reasons that are legitimate and supported, and the central supports here — elevating a screening score over standardized intelligence testing without explanation, treating custodial and trauma-care snapshots as the "totality" of the evidence, and faulting the agency's own rubric as vague — are neither. The persuasiveness finding is not supported by substantial evidence.

These errors were not harmless. On the VE's testimony, crediting even a subset of Dr. Catlin's limitations (the social restrictions, monthly absences, ten-percent off-task time, or unplanned breaks) would preclude all work, and the abstinence-period findings bear directly on the paragraph B ratings and the mental listings absent substance use.[74] The mental-severity finding, the materiality finding, the RFC, and step five all must be revisited on remand.

### 3. Listing 1.18

The step-three finding — that the plaintiff's physical impairments do not meet or equal Listing 1.18 — is supported by substantial evidence, because the record does not document a medical need for a qualifying assistive device for a continuous twelve months. The court affirms this part of the decision.

---

[73] AR 2345–57 (report); *see* AR 2355 (narrative) (cleaned up); Reply – ECF No. 14 at 8–9 (report length).

[74] AR 68–72. To the extent the reply invokes Listing 12.05 for the first time, the argument comes too late for this round of briefing, but on remand the ALJ should consider all potentially applicable mental listings in light of the testing. Reply – ECF No. 14 at 5.

At step three, the claimant bears the burden of showing that his impairment meets or equals every criterion of a listing. *Lewis*, 236 F.3d at 512, 517; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The listings are purposefully set at a high level of severity. *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (cleaned up). As relevant here, Listing 1.18 (abnormality of a major joint in any extremity) requires (in addition to the anatomical, symptomatic, and imaging elements) a documented medical need for a walker, bilateral canes or crutches, or a wheeled and seated mobility device involving the use of both hands, or specified inabilities to use the upper extremities. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.18D. A "documented medical need" means evidence from a medical source supporting the need for the device "for a continuous period of at least 12 months"; a prescription is not required. *Id.* § 1.00C6a (cleaned up). A bare, unexplained step-three finding is insufficient, but the finding may stand where the ALJ's discussion elsewhere in the decision supplies the evaluation. *Lewis*, 236 F.3d at 512–13.

The step-three paragraph here only recites the listing's elements, but the decision's RFC discussion canvasses the physical record, and that record supports the finding.[75] The device documentation clusters around acute injuries: crutches after the November 2019 foot wound (replaced by a wheelchair during the 2020–2021 incarceration because the plaintiff could not grip crutches) and a wheelchair and then a platform walker in the weeks after the November 2022 accident, with walker-only weight-bearing instructions in January 2023.[76] What the record does not contain is medical-source documentation of a device need spanning any continuous twelve-month period, and the intervals tell against one: a January 2020 exam showed full ankle range of motion, and by July 2023 (six months after the platform-walker instructions) the plaintiff reported knee pain after running, with an exam showing full range of motion and the ability to bear weight.[77] The plaintiff's arrival at the June 2024 evaluation in a wheelchair is documented use, not a medical source's documentation of need.[78] And the documented left-hand grip deficit is real and

[75] AR 39–42.

[76] AR 684–85, 711, 723, 726, 746, 748, 788, 877–78, 1052, 1324–25.

[77] AR 40–41 (Ex. 6F/874–75,712–13, 8, 10).

[78] AR 2348.

matters to the RFC, but it does not supply the twelve-month device-need element.[79] On this record, the finding survives review. Because the case is being remanded and the record will be supplemented (including with the 2024 custodial records), the ALJ may revisit step three if the augmented record warrants.

**4. The Symptom Evaluation, the RFC, and Step Five**

Because the court remands for a new hearing and a fresh mental-severity and materiality analysis, it does not comprehensively resolve the plaintiff's remaining challenges. Two aspects of the symptom evaluation, though, were legally erroneous and should not be repeated, and the RFC and step-five findings cannot stand independent of the errors already identified.

Absent affirmative evidence of malingering (there is none: Dr. Catlin found the plaintiff "open, earnest, and forthright"), an ALJ may discount a claimant's symptom statements only for specific, clear, and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *superseded by regulation on other grounds*; *Smartt*, 53 F.4th at 494, 497 (reaffirming the standard).[80]

The first error is the treatment-gap inference. The ALJ reasoned that the record "does not show" treatment for, or complaints of, significant pain or limitation after the July 2023 emergency visit.[81] But the plaintiff was arrested in February 2024 and his 2024 jail treatment records were never obtained: the representative could not get them without a new release from a client he could not locate, asked for the agency's help, and received a three-day window; the ALJ did not subpoena the records.[82] The ALJ has an independent duty to develop the record where the evidence is ambiguous or the record is inadequate to allow proper evaluation, *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001), and SSR 16-3p forbids discounting symptoms for

[79] AR 678, 737, 880, 890, 1324.

[80] AR 2348. The Commissioner preserves his disagreement with the clear-and-convincing standard for further review; it binds this court. Def.'s Br. – ECF No. 13 at 13 n.2.

[81] AR 41.

[82] AR 62–63, 514.

failure to seek treatment without considering the claimant's explanations. Drawing a negative inference from a silence that reflects a known gap in the record (a gap the agency declined to fill) is not a clear and convincing reason. The earlier custodial records suggest what the missing ones may show: the jail repeatedly accommodated the plaintiff's physical impairments with assistive devices, a lower bunk, and a lower tier.[83]

The second error is the mental-health treatment rationale. The ALJ discounted the mental health allegations because the plaintiff had not generally sought treatment and the jail records showed no need for psychotropic medication.[84] It is a questionable practice to chastise a claimant with a mental impairment for the exercise of poor judgment in seeking treatment, *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (cleaned up), and the record supplies exactly the explanations SSR 16-3p requires the adjudicator to consider: homelessness, repeated incarceration, an intellectual disorder, and PTSD.[85] The medication point also overlooks the plaintiff's reported use of Remeron (a prescription antidepressant) at the 2024 evaluation, which the ALJ set aside because the record did not show the prescriber: an omission attributable to the same missing jail records.[86]

For remand, the court also notes two characterizations that overstate the record. The post-accident "doing well" follow-ups occurred while the plaintiff was an inpatient at rehabilitation facilities under walker-only weight-bearing orders, and the single July 2023 running reference (an emergency visit occasioned by the pain that running caused) is thin support for the conclusion that the plaintiff "remains quite functional" enough to stand and walk six hours a day, five days a week.[87] These observations frame the fresh evaluation required on remand; they are not independent holdings.

[83] AR 685, 711, 744, 748, 753–55, 769, 788, 877, 880.

[84] AR 41–42.

[85] AR 678, 736, 899, 907.

[86] AR 42, 2347.

[87] AR 40–41, 1043, 1119, 1236, 1323–25, 1365; Reply – ECF No. 14 at 8–9.

Finally, there is the RFC and step five. The exertional component of the RFC has support in the state-agency physical consultants' opinions, which the ALJ permissibly found persuasive, and the plaintiff's step-five challenge largely restates his evidentiary challenges, so it rises and falls with them. *Cf. Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008).[88] But the RFC as a whole (and the step-five finding that rests on it) incorporates the mental-severity, materiality, opinion, and symptom findings addressed above and cannot stand independent of them. On remand, after completing the record and taking the plaintiff's testimony, the ALJ must reassess the RFC and, as warranted, steps three through five.

**5. The Remedy: Further Proceedings, Not Benefits**

The plaintiff asks the court to credit Dr. Catlin's opinion and his symptom allegations as true and to remand for an award of benefits. The credit-as-true requirements are not met, and the court remands for further proceedings.

A remand for an award of benefits is appropriate only where (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014); *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Even then, the court retains discretion to remand for further proceedings when the record as a whole creates serious doubt that the claimant is in fact disabled. *Leon v. Berryhill*, 880 F.3d 1041, 1044–45, 1047 (9th Cir. 2017). The ordinary remand rule governs except in rare circumstances: a reviewing court generally remands to the agency for additional investigation or explanation. *Treichler*, 775 F.3d at 1099–1102; *see Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943).

The first requirement is met as to the errors identified above, but the second is not. Indeed, the record's incompleteness is part of the error. The plaintiff has never testified. The 2024 custodial

[88] AR 42–43.

treatment records are missing. The etiology of the documented self-care difficulties is unresolved. And the materiality projection (including how much of the plaintiff's custodial stability reflects structure and treatment rather than abstinence) is a factual assessment for the agency in the first instance. Genuine conflicts also remain for the factfinder: Dr. Catlin's observation that the plaintiff sustained attention through her evaluation sits uneasily beside her marked persistence ratings, and the July 2023 running note sits beside the device history. Because essential factual issues remain unresolved, the court remands for further proceedings. *Treichler*, 775 F.3d at 1101.

On remand, the agency must (1) offer the plaintiff a new hearing and the opportunity to appear and testify, with appropriate accommodation of his circumstances; (2) develop the record, including by obtaining the 2024 Santa Rita Jail treatment records (by subpoena if a release cannot reasonably be obtained) and any updated treatment evidence; (3) reevaluate the severity of the plaintiff's mental impairments and the materiality of his substance use under 20 C.F.R. § 416.935 and SSR 13-2p, expressly addressing the abstinence-period objective testing, the 2010 allowance, and the structured-setting considerations; (4) reevaluate Dr. Catlin's opinion under 20 C.F.R. § 416.920c; and (5) reassess the plaintiff's symptom statements, the RFC, and steps three through five as warranted, including any potentially applicable mental listings.

## CONCLUSION

The court reverses the Commissioner's final decision and remands the case under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this order. The court will enter a separate judgment.

This resolves ECF Nos. 12 and 13.

**IT IS SO ORDERED.**

Dated: September 16, 2026

LAUREL BEELER
United States Magistrate Judge